77 So.2d 209 (1955)
Mrs. Lottie Beiggs DECK et al.
v.
Ralph PAGE et al.
No. 20418.
Court of Appeal of Louisiana, Orleans.
January 17, 1955.
Boswell, Loeb & Livaudais, New Orleans, for defendants-appellants.
Charles A. Danna, New Orleans, for plaintiff-appellee.
*210 REGAN, Judge.
Plaintiffs, Mr. and Mrs. Lawrence B. Deck, instituted this suit against Ralph D. Page, the owner and operator of a Ford automobile, and Traders and General Insurance Company, his liability insurer, endeavoring to recover the sum of $21,827.46, representing damages for the personal injuries suffered by Mrs. Deck in the amount of $19,000, and $2,827.46 for medical and other expenses incurred by her husband as the ultimate result of an accident which occurred in the intersection of Broad and Canal Streets in the City of New Orleans, on February 10, 1953, at about 9:00 p. m., when Mrs. Deck was struck by Page's motor vehicle.
Defendants denied that Page was guilty of any negligence in the premises and, in the alternative, pleaded the contributory negligence of Mrs. Deck, whom we shall refer to hereinafter as the plaintiff.
The record contains a stipulation to the effect that the medical and other expenses incurred by Lawrence Deck amounted to the sum of $1,607.46.
From a judgment in favor of the plaintiff in the amount of $3,500 for personal injuries and in favor of her husband for medical and other expenses in the sum of $1,607.46, defendants have prosecuted this appeal. Plaintiff has answered the appeal and requests an increase of the judgment from $3,500 to the sum of $7,500.
The record reveals relatively simple facts. Plaintiff related that on February 10, 1953, at about 9:00 p. m., she alighted from an inbound trolley car at the corner of Canal and Broad Streets and then walked parallel to the street car for several paces or until the car moved across Broad Street. When she reached the edge of the lakeside curbing of the Broad Street roadway as it crosses the Canal Street neutral ground, she looked to her right and saw traffic moving in the inbound roadway of Canal Street. She then looked to her left and observed the defendant's automobile in North Broad Street approaching from about the center of the block between Canal and Iberville Streets. She looked forward or in the direction of the river and observed that the traffic signal facing her reflected a favorable or a green light so she started to walk across the roadway of Broad Street toward what has been designated as the "island neutral ground". Plaintiff testified that she did not look again in the direction from which the defendant was approaching because she believed that he would stop in obedience to the red traffic signal light which faced him. When she had traversed more than one-half of the roadway she was struck, according to the testimony of a police officer, by the right front fender and headlight of the defendant's motor vehicle and thrown into the inbound or uptown roadway of Canal Street.
Prior to the accident the defendant asserted that he was operating his vehicle to the left of center in the roadway of North Broad Street, moving towards Canal Street, at a speed of approximately twenty miles per hour. Plaintiff disputes this speed and insists that he was traveling between thirty-five and forty miles per hour. In any event, defendant related that he initially observed a green traffic signal light facing him when he was about twenty-five feet removed from the corner of Canal Street and he did not see the plaintiff in the intersection until she was about two feet in front of his car and simultaneously he applied the brakes, but was unsuccessful in his endeavor to avoid striking her.
The record reveals that it was a clear night, the street was well lighted and defendant conceded that there was nothing to obstruct his view of the plaintiff as he entered the intersection. Defendant also concedes that when he struck the plaintiff she was in the approximate center of the roadway.
Plaintiff contends that she was free of negligence for the reason that she initiated traversing the roadway on a favorable traffic signal light and was, even according to defendant's version of the accident, about in the center of the roadway when she was struck, therefore, she possessed the right to complete the crossing and defendant was *211 bound to respect this right. In the alternative, counsel for plaintiff argues that even if it be conceded that plaintiff was negligent, the defendant is still liable by virtue of the rule of law enunciated in the case of Rottman v. Beverly, 183 La. 947, 165 So. 153, and extended in Jackson v. Cook, 189 La. 860, 181 So. 195, and reiterated in subsequent cases, for the reason that it is duty of the driver of an automobile to observe a pedestrian, who may have placed herself in a position of danger, of which she is unaware, and even though that situation may have resulted from the negligence of the pedestrian, the operator of the automobile must avoid her if, by maintaining a diligent lookout, he could or should have seen her in time to avoid the accident.
Defendants insist that the plaintiff's negligence was the proximate cause of the accident which consisted of her effort to cross the roadway at a point prohibited by law and, in addition thereto, plaintiff departed from a place of safety and thereafter proceeded to walk into the dangerous path of defendant's motor vehicle. Defendants, in order to substantiate the foregoing conclusions point to an Ordinance of the City of New Orleans and an Act of the Louisiana Legislature which read:
"Article 11 of the Traffic Ordinance of the City of New Orleans (No. 18,202 C.C.S.)
"`Sec. 92 Prohibited Crossing.
"`(a) Between adjacent intersections at which traffic-control signals are in operation, pedestrians shall not cross at any place except a crosswalk.
"`(b) No pedestrian shall cross a roadway other than in a crosswalk in any business district.
"`(c) No pedestrian shall cross a roadway other than a crosswalk upon any boulevard or through street.'
"Louisiana Highway Regulatory Act (Louisiana Revised Statutes 32:237)
"`Every pedestrian crossing a highway within a business or residence district at any point other that a regular pedestrian crossing, cross-walk or intersection, shall yield the right of way to vehicles upon the highway.'"
The trial judge found as a fact that the defendant's negligence was the proximate cause of the accident for the reason that he had an adequate opportunity to observe, if he had been looking, the plaintiff's presence in the center of this roadway and that she was unaware of her peril since she initiated the crossing on a favorable signal light and believed that defendant would respect her right to complete the crossing. Our analysis of the record discloses that this finding of fact was correct since even the defendant concedes that he failed to notice plaintiff's presence in the roadway until his vehicle was one or two feet removed from her body and that there was nothing to obstruct his view of her had he been maintaining a diligent lookout.
In order to convict plaintiff of negligence defendants rely on the ordinance and act quoted hereinabove which they insist prohibited the plaintiff from crossing the roadway at the point described in our factual revelation hereof.
The appellate courts of this State have repeatedly expressed the opinion that the violation of an ordinance or Act of the Legislature is of no importance in the final analysis of a tort action, unless there exists a causal connection between its violation and the resulting accident. Todd v. New Amsterdam Casualty Co., La.App.1951, 52 So.2d 880. In the instant case it is obvious that there is no causal connection between the violation of the law and the resulting accident. Assuming arguendo, that a pedestrian crossing had existed over the roadway at the point in dispute, the accident would, nonetheless, have occurred, because of defendant's negligence in failing to observe plaintiff's presence in the roadway until a time when it was too late to avoid striking her.
Defendants in endeavoring to reverse the judgment of the lower court finally assert that the plaintiff was guilty of negligence *212 in leaving a place of safety and attempting to walk across the roadway in the face of approaching traffic and, therefore, there can be no recovery unless factually the case can be brought within the scope of the doctrines of last clear chance and discovered peril. However, counsel for defendants insist that these doctrines have no application herein and they rely on the conclusions enunciated in Fontenot v. Freudenstein, La.App., 199 So. 677; Bechtel v. Oriol, La.App., 52 So.2d 589 and Hall v. Alfortish, La.App., 60 So.2d 723. An analysis of the foregoing cases reveals that they are all factually distinguishable from the instant case and hold substantially in conformity with the facts found therein that the defendant in each case did not possess the last clear chance to avoid the accident, since he was not afforded an opportunity to discover, despite maintaining a diligent lookout, the pedestrian's peril.
We are of the opinion that this case is encompassed by the rationale expressed by the Supreme Court in Rottman v. Beverly and Jackson v. Cook, supra. In the latter case the Supreme Court said [189 La. 860, 181 So. 197]:
"`The first duty of those who operate engines or motor vehicles is to keep a sharp lookout ahead to discover the presence of those who might be in danger.'
"* * * the duty of those in charge of motor cars and engines to look ahead and observe never ceases; that what they can see they must see and in legal contemplation they do see; that their failure to see what they could have seen by the exercise of due diligence does not absolve them from liability.
"Up to the time the Court of Appeal decided the Rottman Case, 162 So. 73, the jurisprudence relating to the last clear chance doctrine was confusing. This court in several cases had said in general terms that, where the negligence of a plaintiff continued up to the moment of the accident, there could be no recovery. Such statements had been made without qualification, and what we held in the Rottman Case was that such statements were too broad, and we qualified the rule by holding that, when a defendant sees another in peril of which the other is not aware, then a second or subsequent duty arises and devolves upon the defendant, which duty is to use every possible available means to avert injury. We said (183 La. 947, 165 So. page 156):
"`If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance doctrine applies even though plaintiff's negligence continues up to the accident.'"
The plaintiff, a woman forty-six years of age, sustained, as a result of the accident, a fracture of both bones of the lower left leg a little below center; a large hematoma of the left buttock; severe contusions and abrasions about the face, arms, legs, body and hips, all of which caused considerable pain and suffering. On the day after the accident plaintiff's leg was placed in a plaster cast beginning at a point from the back of her toes and extending above her knee near the groin. Her leg remained therein for a period of from four to four and one-half months and upon removal thereof she was confined to her bed and a wheel chair for three months; although she was ordered to wear a brace on her left leg she was unable to walk for an additional period of about one month. Her disability, therefore, extended over a period of approximately eight and one-half months. During the time that her leg was contained in a plaster cast, two large sores developed, one on the back of her knee and one under her heel, which induced such severe pain that it was necessary to remove the cast from these areas in order to facilitate her attending physician in the treatment of these sores. The large hematoma of the left buttock finally healed in response to a *213 month's treatment, but in the course thereof it caused plaintiff to endure intense suffering since she was necessarily compelled to lie on her back most of the time.
After the accident plaintiff suffered shock which induced nervousness to exist over a long period of time, in fact, when the trial occurred, she was still taking the prescribed medication to alleviate this condition.
For the foregoing injuries and the effects thereof the trial judge awarded the sum of $3,500. In our opinion this award is inadequate and we believe that it should be increased to $4,500.
For the reasons assigned the judgment appealed from is amended by increasing the amount awarded Mrs. Deck from $3,500 to $4,500 and, as thus amended, it is affirmed.
Amended and affirmed.