REID, Judge.
This appeal has been consolidated with the appeal in the companion suit of Dolly Ann Summers v. Hartford Accident & Indemnity Company, 229 So.2d 742, appeal No. 7762 on the docket of this Court. These two cases were consolidated in the lower Court for trial.
These cases arise out of an automobile accident which occurred on July 20, 1966, on Louisiana Highway No. 25, between the towns of Covington and Franklinton, Louisiana. The accident involved a Chevrolet automobile driven by the plaintiff Dolly Ann Summers, in which the plaintiff Mary Louise Summers was a guest passenger, and a Ford Falcon automobile owned and operated by Mr. Horace R. Alexius, Jr., The Alexius automobile was insured by the Hartford Accident & Indemnity Company, hereinafter referred to as Hartford, and the Summers automobile was insured by The Travelers Insurance Company, hereinafter referred to as Travelers.
The plaintiff Miss Dolly Ann Summers filed a petition for damages on Febuary 23, 1967, in the Parish of East Baton Rouge, followed by the petition of Miss Mary Louise Summers which was filed on May 9, 1967. On May 19, 1967, the cases were consolidated for trial. The petition of Miss Dolly Ann Summers named as defendant the Hartford Accident & Indemnity Company, the insurer of Horace R. Alexius, Jr., under the direct action statute. The plaintiff Miss Mary Louise Summers named both Hartford Accident & Indemnity Company, the insurer of Horace R. Alexius, Jr., and The Travelers Insurance Company, the insurer of Dolly Ann Summers, as defendants, also invoking the direct action statute.
The cases were heard on February 23, 1968, as to the question of liability only, resulting in judgment being rendered in favor of Mary Louise Summers and against both defendant insurance companies, and dismissing the cause of action filed by Dolly Ann Summers.
Subsequent to additional medical testimony being taken, the matter was finally decided as to the question of damages on May 20, 1968, resulting in judgment being rendered in favor of plaintiff Mary Louise Summers and against the defendants Hartford and Travelers in solido in the sum of $10,000.00 for pain and suffering, plus special damages in the amount of $5,230.68, or *746 a total of $15,230.68. On Wednesday, May 29, 1968, the judgments previously rendered were signed in open court. Subsequently suspensive appeals were taken on .behalf of Hartford and Travelers as to the judgment entered in the case of Mary Louise Summers and a devolutive appeal was taken on behalf of Dolly Ann Summers in her suit against Hartford. Plaintiff Mary Louise Summers filed an answer to the sus-pensive appeal taken by Hartford and Travelers, seeking an increase in the award.
The uncontroverted evidence in this matter reveals that prior to the accident Horace R. Alexius, Jr., was traveling in a northerly direction on Louisiana Highway 25, approximately six or seven miles north of Covington, Louisiana, when he observed an overturned automobile on the right-hand or east side of the highway, and in order to inquire into the necessity of his assistance, Mr. Alexius brought the automobile he was driving to a stop at a point approximately adjacent to the overturned vehicle while remaining in the north-bound lane of traffic on Louisiana Highway 25. While in this position, with his motor running, his air conditioner on and his windows closed, he attempted to inquire from the.driver of the overturned vehicle whether or not his assistance would be needed. The evidence indicates that the shoulders of the highway at this particluar point were approximately nine feet wide and Mr. Alexius admitted that it would have been entirely possible and convenient for him to have parked his car on the right-hand shoulder of the road and out of the lane of traffic. Nevertheless, after remaining in this position for approximately one minute, Mr. Alexius was struck in the rear by the automobile driven by Dolly Ann Summers who was also proceeding in a northerly direction.
It appears that immediately south of the point of the accident there is a small hill over which both Mr. Alexius and Miss Summers traveled prior to the accident, the crest of the hill being some 650 feet from the point of impact. Miss Summers testified that as she reached a point which would be approximately the crest of the hill, she noticed the automobile of Mr. Alexius, the overturned vehicle, and the driver of the overturned vehicle standing on the shoulder of the road. Miss Summers, however, testified that she immediately assumed that the automobile of Mr. Alexius was moving, and it was not until a few seconds later that she realized that the automobile was in fact stopped. It seems to us that noticing all of these facts, Miss Summers should have realized that an unusual situation was ahead of her and she should have immediately slackened her speed so as to avoid the accident. We think that her failure to do so was negligence on her part.
Miss Summers testified that she first attempted to pass the Alexius automobile but that when she tried to enter the southbound lane of traffic she found it occupied and had to swerve back into the northbound lane of traffic and apply her brakes in an effort to stop her automobile prior to the impact. She was, of course, unsuccessful in doing so and the collision resulted.
The trial Judge in his oral reasons for judgment found that the damages sustained by Miss Mary Louise Summers resulted from the joint negligence of both Dolly Ann Summers and Horace R. Alexius. He further found that the contributory negligence on the part of Dolly Ann Summers was sufficient to defeat her claims as against Mr. Alexius.
The first and foremost issue to be decided is the negligence of Mr. Horace R. Alexius, Jr., the insured of Hartford Accident & Indemnity Company. Despite the protestations of the counsel for Hartford, there can be no question but what LSA-R.S. 32:141 is applicable in this instance, the pertinent part of which is as follows, to-wit:
“A. Upon any highway outside of a business or residence district, no person *747 shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.”
As this statute is a safety measure designed to protect life and property, a violation of same is negligence per se. In determining whether the violation of the statute was a proximate cause of the accident in question, we feel that the analysis provided in Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), cited by both plaintiffs and defendants, provides us with a workable formula. This case holds as follows:
“The statute was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence per se, and this negligence is actionable if it was a legal cause of the collision.
“There is no universal formula for the determination of legal cause. In the instant case it bifurcates into two distinct inquiries: whether the negligence of the obstructing driver was a cause-in-fact of the collision; and whether the defendants should be relieved of liability because of the intervening negligence of the driver of the Dixie truck.
“It is clear that more than one legally responsible cause can, and frequently does, contribute to a vehicular collision.
“Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm. Under the circumstances of this case, the negligent conduct is undoubtedly a substantial factor in bringing about the col-lison if the collision would not have occurred without it. * * * ”
Applying the rationale of that case, we must first ask if the negligence of Alexius was a cause-in-fact of the accident. In making this determination it is necessary only to find that the negligence of Alexius was substantial. There can be no question but that it was.
The next question to be determined then, was whether the risk encountered and the resulting harm was intended to be protected by the statute. Again we must agree with the trial court that this most certainly is the case in that the negligence of Mr. Alexius was a proximate cause of the accident.
The joint negligence of Miss Dolly Ann Summers is, however, quite another question. The record does not reflect, and in fact the point has never been raised, that Miss Summers in any way violated any provisions of the highway regulatory act, and, therefore, there is no question of negligence per se. The trial Court nevertheless found that Miss Dolly Summers was negligent in that “she was inattentive to her driving; that she had ample opportunity to see the defendant vehicle and to observe that this defendant vehicle was stopped; and, that she could have brought her automobile to a complete stop without striking the rear of the defendant vehicle, had she not been inattentive and had she been keeping a proper lookout.” In so finding, the trial Court held that Miss Summers was a joint tort-feasor and as a result found her insurer, Travelers, liable for the damages sustained by Miss Mary Louise Summers, jointly and in solido with Hartford. Much analysis of the evidence provided at the trial of this matter has been provided in briefs of counsel, particularly as to the question of stopping and skid marks, perception and reflexes, and the point at which Miss Summers actually should have been able to observe the vehicle of Mr. Alexius. While the various principles of physics were considered and the appropriate vari *748 ables necessary to accurately compute the coefficient of friction, speed and the resulting distance necessary to bring the automobile to a controlled halt, there was no evidence upon which this Court may justify a finding of manifest error on the part of the trial Court, and its finding as relates to the joint negligence of Mr. Alexius and Miss Dolly Ann Summers and the resulting judgment in favor of Miss Mary Louise Summers should be affirmed.
As to the claim for damages asserted by Miss Dolly Ann Summers, we find no error in the ruling of the trial Court. We have established the negligence of Miss Dolly Ann Summers to such an extent as to find that she was a joint tort-feasor and hold her insurer, Travelers, liable in solido with Hartford for the injuries sustained by Miss Mary Louise Summers. This would of necessity constitute sufficient contributory negligence on the part of Miss Dolly Ann Summers to deny any recovery for damages she may have sustained. However, it is strenuously argued by counsel for Dolly Ann Summers that the doctrine of last clear chance should apply so as to relieve Miss Summers from her contributory negligence. Counsel for Miss Summers contends that the failure of Mr. Alexius to maintain a proper lookout and to remove his automobile to the shoulder of the highway prior to the accident was sufficient grounds for the application of the doctrine of last clear chance. The trial Judge obviously felt that the facts did not sustantiate the use of the doctrine of last clear chance and dismissed Miss Dolly Ann Summers’ cause of action.
We believe that under the case of Howard v. Fidelity & Casualty Company of New York, La.App., 179 So.2d 522, neither Miss Dolly Ann Summers nor Hartford can apply the doctrine of last clear chance. This case holds as follows:
“However, while Howard and Wilson may invoke as between one another the doctrine of last clear chance in determining liability for the accident jointly caused by the negligence of Howard and Wilson, nevertheless the doctrine of last clear chance cannot be invoked by one tort-feasor so as to avoid liability to innocent third parties who sustain damages as the result of the negligence of both tort-feasors. Shield v. F. Johnson & Son Co., Ltd., et al., 132 La. 773, 61 So. 787, 47 L.R.A.,N.S., 1080; Hebert v. Travelers Insurance Co., La.App. 3 Cir., 179 So.2d 513 (rendered this date).” (Emphasis by the author.)
This brings us to the question of quantum of damages. The special damages are not in dispute. In his oral reasons dictated in the record the trial Judge made the following finding of fact concerning physical injuries suffered by Miss Mary Louise Summers, to-wit:
“Now, with regard to the physical injuries suffered by this plaintiff, we are all in accord that she suffered a fracture of the third lumbar vertebrae; that she had relatively minor contusions of the knees and the umbilicus area and, although I am sure counsel is not in agreement as to the nature and extent of the injury to the right neck and right shoulder area, the evidence bears out that she did sustain same muscular injury in that area although it was not of a serious nature.
“The doctors were seemingly in accord that this plaintiff had, what I believe was termed, paralytic ileus while in the hospital and that this was a result of the injury to her back. In lay terms I suppose we could properly assess this as being trouble with the digestive tract or constipation. But, certainly during the early days in the hospital this was something more than just an ordinary case of such trouble. This is not to say that the Court believes that this was serious or prolonged but the distension of the stomach and the condition did involve a change in the method of nurishment for the patient and did involve treatment during the time she was in the hospital. * * * ”
*749 We concur in this finding of fact concerning the nature and extent of Miss Mary Louise Summers’ injuries.
As a result of the injuries sustained by Mary Louise Summers she was hospitalized for approximately one month and confined to her home for approximately two months after the accident. It was necessary for her to wear two different back braces for a period of several months, and she continued to complain of pain up until the time of the trial.
As is usual in these cases, each side cited cases for either an increase or a decrease in the award. The trial Court awarded plaintiff the sum of $10,000 plus special damages in the amount of $5,230.68, which consisted of medical expenses in the amount of $3,013.13 and $2,217.55 for lost wages. We do not find any abuse of discretion on the part of the trial Judge in assessing these amounts of damages.
We therefore affirm the judgment of the lower Court at the cost of appellants.
Affirmed.